CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
MICAH SMITH
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii    96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:    Ken.Sorenson@usdoj.gov
          Micah.Smith@usdoj.gov
          Michael.Albanese@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 19 2022

at ___ o'clock and ___ min ___ M
John A. Mannle, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 22-00072 DKW |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE:    September 19, 2022 |
| STEWART OLANI STANT, | ) TIME:    9:00 a.m. |
| | ) JUDGE:  Hon. Derrick Watson |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, STEWART OLANI STANT, and his

attorney, Cary Virtue, Esq., have agreed upon the following:

## THE CHARGES

1.    The defendant acknowledges that he has been charged in an

Information with conspiracy to commit honest services wire fraud, in violation of

Title 18, United States Code, Sections 1349, 1343 and 1346.

2.    The defendant has read the charges against him contained in the

Information, and those charges have been fully explained to him by his attorney.

3.    The defendant fully understands the nature and elements of the crime

with which he has been charged.

## THE AGREEMENT

4.    The defendant agrees to waive indictment and enter a voluntary plea

of guilty to the Information, which charges him with one count of conspiracy to

commit honest services wire fraud.    The defendant is aware that he has the right

to have this felony asserted against him by way of grand jury indictment.    The

defendant hereby waives this right and consents that this offense may be charged

against him by way of the Information.    In return for the defendant's plea of

guilty to the Information, the government agrees not to charge the defendant

2

with additional violations of law related to the defendant's acceptance of bribes and other items of value known to the government on the date of this agreement.

5.      The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.      The defendant enters this plea because he is in fact guilty of conspiracy to commit honest services wire fraud as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## **PENALTIES**

7.      The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.      As to Count 1, a term of imprisonment of up to 20 years and a fine of up to $250,000, plus a term of supervised release of up to 3 years.

b.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.   The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the

prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

       c.    **Forfeiture.**  Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendant shall forfeit any and all property, real or personal, constituting, or derived from, proceeds traceable to the violation of the offense set forth in the Information.

       d.    **Restitution.**  The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses.   The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office.

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

       a.    Beginning at least by October 2012, and continuing until in or around December, 2018, the defendant used his position as an official with the Maui County Department of Environmental Management ("DEM") to direct

4

millions of dollars of contracts and purchase orders to a Hawaii businessperson, Milton Choy, in return for more than $2,000,000 in bribe payments and financial gifts.

        b.     From at least January, 2009 to January, 2018, the defendant was an employee of the Maui County DEM. DEM directed and oversaw operations of its three subdivisions, the Wastewater Reclamation Division, the Solid Waste Division and the Environmental Protection and Sustainability Division. The defendant served as a manager of the Solid Waste Division of DEM from January 2009 to December 2015. In December of 2015, the defendant was appointed by the Mayor of Maui to act as the Director of DEM, a position he held until December of 2018.

        c.     Choy was the owner and president of H2O Process Systems, LLC ("H2O"), a Honolulu, Hawaii based company that provided various wastewater services, including distributing, installing, and consulting of various wastewater equipment and parts. H2O was formed in Washington in 2001 and has been registered in the State of Hawaii since 2008. Throughout the period of the charged conspiracy, H2O supplied services and equipment to DEM pursuant to the terms of approximately 56 sole source contracts DEM entered into with H2O.

d.     During all times relevant to the charge in this case, the Charter .

of Maui County provided:   "No officer or employee of the county shall solicit,

accept or receive any gift; directly or indirectly, whether in the form of money,

service, loan, travel, entertainment, hospitality, thing or promise, or in any other

form, under circumstances in which it can reasonably be inferred that the gift is

intended to influence the officer or employee in the performance of the officer's or

employee's official duties or is intended as a reward for any official action on the

officer's or employee's part."

e.     In order to ensure the honest and ethical job performance of its

county officials, Maui County enacted rules that provided: "[a]ll elected and

appointed public officers shall file public financial disclosure statements with the

county clerk."   MCBOE Rules require the financial disclosure statement to

provide "[a] description of any gift or gifts, valued singly, or in the aggregate at

$50 or more, from any single source, received directly or indirectly by the person,

...within the preceding 12 months".

f.     At a time unknown, but at least by October of 2012, the

defendant, using his authority as a Maui County official, began to direct sole

source contracts, and other contract business, to Choy and H2O in return for

financial benefits.   When in January of 2015 the defendant became the Director of

6

DEM, he continued to improperly use his influence and official position to guide and award DEM contracts to Choy and H2O.

        g.     In order to effectuate his scheme to direct sole source contracts to Choy for his personal financial gain, the defendant frequently signed requests for sole source contracts to H2O by personally certifying that "the goods, services, or construction are available through only one source".   In doing so, the defendant funneled lucrative Maui County contracts to Choy and arranged for H2O to avoid the normally mandated competitive bidding process for county contracts.

        h.     From between October, 2012 and December, 2018, the defendant received $733,176 in bank deposits from Choy.   These deposits were made into accounts owned by the defendant on the dates and in the amounts set forth below:

| Date | Amount |
|---|---|
| 10/25/12 | $18,000 |
| 5/20/13 | $9,000 |
| 5/28/13 | $9,000 |
| 6/10/13 | $17,000 |
| 7/31/13 | $6,000 |
| 8/14/13 | $59,560 |
| 10/21/13 | $16,000 |
| 12/4/13 | $9,450 |
| 12/20/13 | $40,000 |
| 1/29/14 | $17,000 |
| 2/7/14 | $14,000 |
| 2/28/14 | $36,002 |

| Date | Amount |
|---|---|
| 3/25/14 | $23,400 |
| 4/3/14 | $16,600 |
| 4/28/14 | $25,000 |
| 5/15/14 | $22,900 |
| 5/30/14 | $26,490 |
| 6/16/14 | $12,874 |
| 6/23/14 | $12,374 |
| 7/9/14 | $7,056 |
| 8/4/14 | $13,600 |
| 8/13/14 | $15,503 |
| 9/10/14 | $11,000 |
| 9/24/14 | $23,000 |
| 10/27/14 | $19,987 |
| 11/6/14 | $5,000 |
| 3/3/15 | $5,000 |
| 3/10/15 | $7,000 |
| 3/25/15 | $59,980 |
| 4/23/15 | $11,400 |
| 5/20/15 | $22,000 |
| 6/11/15 | $15,000 |
| 8/25/15 | $6,000 |
| 3/14/16 | $9,000 |
| 3/15/16 | $9,000 |
| 11/30/16 | $55,000 |
| 12/20/16 | $4,000 |
| 3/24/17 | $8,000 |
| 5/22/17 | $5,000 |
| 3/16/18 | $6,000 |
| 4/27/18 | $5,000 |
| 9/11/18 | $2,000 |
| 9/24/18 | $18,000 |
| TOTAL | $733,176 |

8

i.     During the same time period, bank accounts associated with the defendant received at least 118 cash deposits, each greater than or equal to $1,000, totaling approximately $644,570, most of which were deposited or provided to the defendant by Choy.

j.     Choy also provided the defendant with travel benefits in the approximate amount of $424,987, including airfare and hotels.   Additionally, Choy gave the defendant gambling chips during mutual trips the defendant and Choy took to Las Vegas.   Las Vegas gaming records document that the defendant cashed in over $183,000 in gambling chips that he did not purchase.

k.     During the time period of the alleged conspiracy, the defendant regularly guided and arranged the awarding of at least 56 DEM contracts to H2O with an approximate total value of $19,316,930.

l.     The defendant and Choy regularly used interstate wire communications to facilitate their scheme to defraud the citizens of Maui County of the honest services of the defendant.   For instance, at least 34 of the 43 deposits listed in paragraph 8(h) of this agreement moved through interstate banking transactions.

m.     Additionally, the defendant and Choy used interstate communication services (text messaging) to facilitate their scheme to defraud.

9

For instance, on May 16, 2016, the defendant texted Choy telling Choy that he was "waiting for a PO#" (purchase order #) which was necessary in order for the County to pay Choy and H2O.   On May 17, 2016, Choy responded "if we can get the big check Thursday I will have something for you when I come Maui", indicating that the defendant would be financially rewarded when a purchase order was approved awarding a contract to H2O.

n.    On August 29, 2016, the defendant texted Choy regarding the purchase order for a filtration system. "I just returned from finance, PO (purchase order) will be cut by tomorrow morning".   Choy responded on August 31, 2016: "OK. Hopefully we get PO tomorrow.   When we go up I will have 125 for u." Choy was referring to a mutual trip the two were taking to Las Vegas, and promising $125,000 to the defendant once they arrived there.   On September 6, 2016, the defendant texted to Choy the copy of an email he had received from Maui County treasury officials authorizing the release of $1,113,962 in funds to Choy and H2O.

o.    The defendant and Choy traveled to Las Vegas in early September 2016.   Upon defendant's return to Maui, the following cash deposits were made to his bank account: $6,000 and $3,000 deposited into his American Savings Bank (ASB) account on September 15, 2016, $9,000 deposited into his

10

Bank of Hawaii (BOH) account on September 15, 2016, and $9,000 deposited into his ASB account on September 16, 2016.

      p.    While employed as an official with DEM, the defendant purposefully failed to report or declare any of the money and financial benefits provided to him by Choy.   While acting as the director of DEM, the defendant represented on his sworn 2016, 2017 and 2018 financial disclosure forms that he had received no gifts or items valued at over the annual limits of $50.   In truth and fact, the defendant received thousands of dollars in bribes from Choy during these reporting periods.

      q.    Through his failure to report his receipt of bribery payments to Maui County authorities and the Maui Board of Ethics, the defendant intentionally concealed from the citizens of Maui County, the public at large, and DEM, information that would have disclosed his corrupt acceptance of bribes in return for directing, and agreeing with Choy to direct, sole source contracts to H2O for personal his financial gain.

## SENTENCING STIPULATIONS

      9.    Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the

actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

b.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.   Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in

12

sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and

13

any sentence within the Guidelines range as determined by the Court at the time of sentencing, and any lawful restitution order imposed, or the manner in which the sentence or restitution order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a. The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.     The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.     In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.     The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (USPO) will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial

15

statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.    The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.    Prior to sentencing, the defendant agrees to notify the Financial Litigation Program of the United States Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or

16

indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## FORFEITURE

15.    As part of his acceptance of responsibility and pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, the defendant agrees as follows:

a.    The defendant consents to the entry of a money judgment in the amount of $1,900,000, reflecting criminal proceeds the defendant received from Choy for the offenses charged in the Information (the "Forfeiture Money Judgment").

b.    The defendant knowingly and voluntarily waives and agrees to waive any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment.   The defendant waives all constitutional, legal, and equitable defenses to the entry of and collection of the Forfeiture Money Judgment.   The defendant knowingly and voluntarily waives any right to a jury trial on the forfeiture of property.

c.    The defendant agrees to consent promptly upon request to the entry of any orders deemed necessary by the government or the Court to complete

17

the forfeiture and disposition of the property.   The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of forfeiture in the charging instrument, announcement of forfeiture at sentencing, and incorporation of the forfeiture in the judgment.   The defendant acknowledges that he understands that the forfeiture of the property, if the government elects to conduct the forfeiture criminally, will be part of the sentence imposed upon the defendant in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure, during the change of plea hearing.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, the defendant consents to the Forfeiture Money Judgment becoming final as to the defendant when entered.

   d. The defendant understands that the forfeiture of the forfeitable property does not constitute and will not be treated as satisfaction, in whole or in part, of any fine, restitution, reimbursement of cost of imprisonment, or any other monetary penalty this Court may impose upon the defendant in addition to the forfeiture.

   e. The defendant represents and agrees that, within the meaning of 21 U.S.C. § 853(p), the Forfeiture Money Judgment amount represents property subject to forfeiture that, as a result of any act or omission of the defendant,

18

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty.

f.      Payment of the Forfeiture Money Judgment shall be made by postal money order, bank check, or certified check payable to the United States Marshals Service.   Defendant shall pay the forfeiture amount promptly following entry of the Court's final order of forfeiture.   Payment shall be made to the Asset Forfeiture Unit, United States Attorney's Office, District of Hawaii, PJKK Federal Building, 300 Ala Moana Boulevard, Room 6-100, Honolulu, Hawaii 96850, with the criminal docket number noted on the face of the check.

g.      The defendant understands that interest shall begin to accumulate on any outstanding balance of the forfeiture sum commencing 30 days after the entry of the final order of forfeiture.   Interest shall accrue at the judgment rate of interest (as defined by 28 U.S.C. § 1961) on any unpaid portion thereof. Furthermore, if the defendant fails to pay any portion of the Forfeiture Money Judgment on or before 30 days following the entry of the Final Order of Forfeiture, the defendant consents to the forfeiture of any other property alleged to be subject

19

to forfeiture in the Information, including substitute assets, in full or partial

satisfaction of the money judgment, and remains responsible for the payment of

any deficiency until the Forfeiture Money Judgment, including any accrued

interest, is paid in full.

## IMPOSITION OF SENTENCE

16.    The defendant understands that the District Court in imposing

sentence will consider the provisions of the Sentencing Guidelines.    The

defendant agrees that there is no promise or guarantee of the applicability or non-

applicability of any Guideline or any portion thereof, notwithstanding any

representations or predictions from any source.

17.    The defendant understands that this Agreement will not be accepted or

rejected by the Court until there has been an opportunity by the Court to consider a

presentence report, unless the Court decides that a presentence report is

unnecessary.    The defendant understands that the Court will not accept an

agreement unless the Court determines that the remaining charge adequately

reflects the seriousness of the actual offense behavior and accepting the Agreement

will not undermine the statutory purposes of sentencing.

20

## WAIVER OF TRIAL RIGHTS

18.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.    The trial could be either a jury trial or a trial by a judge sitting without a jury.    The defendant has a right to a jury trial.    However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.    The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.    The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.    The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.     At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

f.     At a trial, the defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substance charged in the Information necessary to establish the statutory mandatory minimum penalty or an increased statutory maximum penalty.

22

19.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.    The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

20.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial or other proceeding if the defendant later proceeds to trial.    In particular, by signing this agreement, the defendant agrees that all of the statements in paragraphs 8.a. through 8.oo. above are accurate and truthful, and by signing this agreement, the defendant accepts that those factual stipulations are truthful admissions that may be used against him in a subsequent trial or other proceeding.    By signing this agreement, the defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement, including the statements in paragraphs 8.a. through 8.oo. . above, or during the

23

course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it.   Under those circumstances, the United States may not use those statements of the defendant for any purpose.

21.   The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

## COOPERATION

22.   The defendant agrees that he will fully cooperate with the United States.

a.   The defendant agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others charged later in the investigation, sentencing hearings, and related civil proceedings.

b.   The defendant agrees to be available to speak with law enforcement officials and representatives of the United States Attorney's Office at any time and to give truthful and complete answers at such meetings, but he

understands he may have his counsel present at those conversations, if he so desires.

   c. The defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crimes charged in this Information or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

   d. The defendant agrees that his sentencing date may be delayed based on the government's need for the defendant's continued cooperation, and agrees not to object to any continuances of the defendant's sentencing date sought by the United States.

   e. Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under Section 1B1.8(b) of the Sentencing Guidelines.

  23. In the event that the defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after the defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution

agrees not to use said statements in its case-in-chief in the trial of the defendant in this matter.   The defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

24.   Pursuant to Guidelines § 5K1.1 and Rule 35(b) of the Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.   The defendant understands that:

a.   The decision as to whether to make such a request or motion is entirely up to the prosecution.

b.   This Agreement does not require the prosecution to make such a request or motion.

c.   This Agreement confers neither any right upon the defendant to have the prosecution make such a request or motion, nor any remedy to the defendant in the event the prosecution fails to make such a request or motion.

d.   Even in the event the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

26

25.     The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

26.     To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

//

//

//

//

//

//

27

27.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.


AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii


KENNETH M. SORENSON
MICAH SMITH

STEWART OLANI STANT
Defendant


Dated:   3/14/22                          Dated:   9/9/2022


CARY VIRTUE
Attorney for Defendant


Dated:   9/9/2022


28